RICHARD OLNEY & others *vs.* FRANCIS V. BALCH & others.

Suffolk.    April 1, 1891. — September 2, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Will — Power of Appointment — Assets.*

A testatrix out of the income of a trust fund gave an annuity to her son G., to whose children one seventh of the fund was to go at his death, and directed the rest of such income to be divided among her six daughters during their lives, the share of the income of each at her death to be paid to her issue " until the time at which the principal estate is to be held and distributed as hereinafter is provided for, and to the use of my grandchildren "; if no issue, to her

surviving sisters and their issue. The will then provided that "each and every of my daughters are authorized to dispose of their several proportions of the principal of the trust estate by will or other testamentary instrument, which power shall be exercised to take effect only in the event that the daughter exercising the power herein conferred shall decease without issue her surviving"; and in a later clause, that "at the decease of the survivor of my seven children, the estate in the hands of the trustees, subject to the provisions hereinbefore made for my son and his child or children him surviving, shall be divided into shares equal in number to the number of my grandchildren then living, excluding from such number the child or children of my son G. unless they shall be the sole surviving grandchildren, and one share shall thereafter be held in trust for each grandchild." G. died before his sisters, one of whom, S. P., afterwards died leaving no issue, having disposed by will of her share in her mother's estate. *Held*, that S. P. had a right to make a disposition of her share of the principal of the trust fund to take effect upon her death; and that such share became in equity a part of the assets of her estate, and was to be paid over to her executors to be administered by them.

BILL IN EQUITY, by the trustees under the will of Sally Hammond, for instructions as to the distribution of a part of a trust estate. The case was heard, and reserved for the consideration of the full court, and was as follows.

The five living daughters of Sally Hammond, the executors and trustees and appointees under the will of a deceased daughter, Sally S. Pickering, and all of the living grandchildren of Sally Hammond, were made parties defendant. A guardian *ad litem* was appointed to represent persons unascertained and not in being. By her will the testatrix gave the greater part of, her estate in trust to the plaintiffs, to " hold the estate given to them for and during the natural lives of my seven children and the survivor of them, and until the distribution of the principal sum, as is in this instrument hereinafter provided." The will then provided, in the fourth article, that out of the income of the trust estate the trustees should pay to her son George Hammond during his life the sum of one thousand dollars annually, and at his death one seventh part of the estate held by the plaintiffs in trust was to be paid over to his child or children. By the fifth article of the will, the trustees were directed "to pay the residue of the income which may be derived from the trust estate" to the six daughters of Sally Hammond during their lives. The will then continued as follows :

" Sixth. If any of my daughters shall decease leaving children her surviving, the income theretofore payable to such

daughter shall thereafter be paid to such children until the time at which the principal estate is to be held and distributed as hereinafter is provided for, and to the use of my grandchildren.

" Seventh.  If any of my daughters shall decease without leaving any child or children her surviving, the income theretofore payable to such daughter shall thereafter such decease be distributed to her surviving sisters, and the issue of any deceased sister, such issue taking by representation.  Each and every of my daughters are authorized to dispose of their several proportions of the principal of the trust estate by will or other testamentary instrument, which power shall be exercised to take effect only in the event that the daughter exercising the power herein conferred shall decease without issue her surviving.

" Eighth.  At the decease of the survivor of my seven children, the estate in the hands of the trustees, subject to the provisions hereinbefore made for my son and his child or children him surviving, shall be divided into shares equal in number to the number of my grandchildren then living, excluding from such number the child or children of my son George, unless they shall be the sole surviving grandchildren, and one share shall thereafter be held in trust for each grandchild, the income to be paid to him or her during his or her life, and at his or her decease the principal sum of such share to be paid to such person as he or she may by will direct, in default of such direction to his or her heirs.  The exclusion of the child or children of my son George, as in this clause is provided, results from the provision made for him and his children in the fourth clause."

After the death of the testatrix, George Hammond died, and the share of the trust estate theretofore held for his benefit was paid over as required by said will.  Sally S. Pickering, one of the daughters of the testatrix, has died without leaving any surviving child or children, and leaving a will whereby she exercised the power of appointment created by the seventh article of the will of Sally Hammond.

The surviving sisters of Sally S. Pickering contended that the will of Sally Hammond did not confer upon Sally S. Pickering any power of testamentary disposition over any part of the

trust estate, and that the share of income formerly payable to her should be paid to such sisters until the principal of the trust estate becomes distributable by the death of the last survivor of them.

The executors of the will of Sally S. Pickering and the appointees under her will both contended that she had full power of testamentary disposition over one sixth of the fund remaining in the hands of the plaintiffs after the payment to the children of George Hammond, and that she had duly exercised the power ; and as between themselves each class respectively contended that it was entitled to demand and receive at once one sixth of said remaining trust estate. The question was also raised whether any appointment made by a deceased daughter would take effect until the final distribution of the estate provided for upon the death of the survivor of the seven children of the testatrix.

*R. H. Gardiner*, for the executors of Sally S. Pickering.

*F. Rackemann*, for a trustee under the will of Sally S. Pickering.

*F. I. Amory*, for the surviving daughters of Sally Hammond.

*S. Butler*, for grandchildren of Sally Hammond.

*F. C. Lowell*, for the guardian *ad litem*.

ALLEN, J. Upon an examination of the various provisions of this will, which are thought to be somewhat inconsistent with each other, we are brought to the conclusion that, by the second clause of the seventh paragraph, the testatrix gave to each daughter authority to dispose by will of her proportion of the principal of the trust estate, to take effect only in the event that such daughter should die without issue. This authority might be qualified by the right of George to receive one thousand dollars annually, from the income of the whole property left in trust, during his life ; but as he died before either of his sisters, this need not be considered. Subject to this possible right, we think Sally S. Pickering had the right to make a disposition of her share of the principal, to take effect upon her death , and that the various provisions which are thought to give rights inconsistent with the exercise of this authority must be construed in subordination thereto.

She having executed a will making a disposition of her share in her mother's estate, the property thus disposed of is deemed

in equity to be a part of her assets, and subject to the demand of her creditors in preference to the claims of her voluntary appointees or legatees.   *Clapp* v. *Ingraham*, 126 Mass. 200.

The question is raised whether the property should be administered by the trustees under the mother's will, they paying over the property to the persons who are to receive it under the will of the daughter, or whether those trustees should pay it over to the daughter's executors, to be administered by them.   The latter seems to us to be the proper course.   Creditors, if there are any, will present their claims to the executors, and will be barred within two years.   The duty of the trustees is well discharged by paying over the requisite sum to the executors of the daughter's will.   If it, or any part of it, is needed for debts, the executors are the proper persons to ascertain and pay them. They can hold the property, exempt from suits, for a proper length of time, for this purpose.   As a method of administration, it is more simple and convenient to treat the property as assets of the daughter's estate, to be administered by her executors.   *Hayes* v. *Oatley*, L. R. 14 Eq. 1.   *In re Hoskin's trust*, 5 Ch. D. 229, and 6 Ch. D. 281.   We need not anticipate the question suggested by counsel, whether this property can be applied to debts before all other assets are exhausted.

In *O'Donnell* v. *Barbey*, 129 Mass. 453, where a trustee was directed to pay directly to a creditor of one who had exercised a power of appointment, the circumstances were peculiar.   One Brooks had died, leaving no property of his own, but leaving a will in which he exercised a power of appointment.   Barbey was his executor and appointee ; and, as executor, had refused to pay the claim of the plaintiff, who was a judgment creditor of Brooks.   The appointed property was held in trust, and the plaintiff filed his bill against Barbey and the trustee, to establish his right to be paid from the appointed property.   This right was established ; and it was said that the trustee should sell the property and pay the plaintiff.   An examination of the briefs shows that the point was not taken that the money, if going to the plaintiff, should pass through the executor's hands. The method there adopted, though highly proper under the circumstances which there existed, is no rule for the present case.                                        *Decree accordingly.*