## COMMISSIONER OF INTERNAL REVENUE v. NEVIUS.
### No. 248.

Circuit Court of Appeals, Second Circuit.
March 18, 1935.

For opinion below, see 30 B. T. A. 70.

Frank J. Wideman, Asst. Atty. Gen. (Sewall Key and Arnold Raum, Sp. Assts. to Atty. Gen., of counsel), for petitioner.

Marland Gale, of New York City (Ralph B. Plager, of New York City, of counsel), for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

Charlotte Jane Jones, a resident and citizen of England, died testate on September 29, 1930. In 1917 her husband had created a testamentary trust under which she was to receive the net income of a one-eighth share of the trust during her life, and was given power to dispose of said one-eighth share by her will. In default of testamentary appointment by her, the trustees were to pay over said share to the settlor's grandchildren. By her will, duly probated in England, Mrs. Jones exercised the power of appointment and directed that the bequests contained in her will "take effect out of the said one-eighth share and out of my private estate as a blended fund." At the date of her death, the trust estate was composed in part of shares of stock in American corporations, the certificates for which were held by the trustees in England. All of the persons involved in the transaction—the creator of the trust and

donor of the power, the trustees, the donee of the power, and the appointees in whose favor it was exercised—were citizens and residents of England. The question for decision is whether the Commissioner of Internal Revenue can legally include in Mrs. Jones' gross estate, for purposes of the federal estate tax, one-eighth of the value of the above-mentioned stock. The Board of Tax Appeals answered this question in the negative.

The relevant provisions of the Revenue Act of 1926 (44 Stat. 70, 72, §§ 302 (f) (1), 303 (d), 26 USCA §§ 1094 (f) (1), 1095 (d), read as follows:

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—* * *

"(f) To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will. * * *

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined—* * *

"(d) For the purpose of this title, stock in a domestic corporation owned and held by a nonresident decedent shall be deemed property within the United States. * * *"

■■ After the decision of Burnet **v.** Brooks, 288 U. S. 378, 53 S. Ct. 457, 77 L. Ed. 844, 86 A. L. R. 747, no doubt can exist as to the power of the United States to levy a tax upon the transfer of shares of stock in a domestic corporation. The United States has jurisdiction to tax when it can lay hold of either the obligor or the obligee of a chose in action. In the case of shares of stock, the corporation is the obligor. In the case at bar the obligee of the chose in action was not the decedent but the trustees. What was transferred by the decedent's exercise of her power of appointment was the equitable interest in an undivided share of the chose in action. It is within the power of a sovereign having jurisdiction over the obligor to put conditions on the enforcement of a chose in action when the equitable interest in a part thereof has been transferred no less than when the whole legal title has been assigned. Hence the question becomes one of the meaning of the statute—whether it expresses an intention to levy the tax claimed by the Commissioner.

■■ The respondent contends that section 303 (d) of the act (26 USCA § 1095 (d) declares that foreign held stock in a domestic corporation is to be deemed to have a taxable situs in the United States only when "owned and held by a nonresident decedent," and that the stock in question was owned and held by the English trustees, not by the decedent. But the Revenue Act includes within the taxable estate not only (1) property owned by the decedent, but also (2) property owned by others over which the decedent has a general testamentary power of appointment. In our opinion section 303 (d) is an admonitory declaration of jurisdiction to tax stock owned by a nonresident decedent, and not a limitation upon taxation under section 302 (f) of the act [26 USCA § 1094 (f)], of all property, to the extent that jurisdiction exists, passing under a general power of appointment exercised by will. Such has apparently been the administrative interpretation of section 303 (d), since it is provided in article 50 of Regulations 70 that "stock of a corporation or association created or organized in the United States constitutes property having a situs in the United States." Therefore we regard the fact that the stock was owned and held by trustees as immaterial, except in so far as it may effect the question whether the stock "passed" under the power, within the meaning of section 302 (f).

■ The respondent contends that it did not; that the decedent exercised the power by a will which gave bequests from her individual property and the proceeds of the power as a blended fund; that the only rights which passed to her executors as appointees under the power were rights in personam against the trustees to require an accounting and receive a one-eighth portion of the trust fund, which might not, so far as appears, include in the property actually turned over by the trustees any of the stock in the American corporations. Historically it may be accurate to think of equitable interests in property as merely rights in personam against the holder of the legal title. See Perry, Trusts (7th Ed.) § 13. But it is most unlikely that the framers of a tax statute intended to carry any such nice distinctions into their legislation. Equitable interests are so common and so valuable that it is incredible that they should be excluded from taxation. The naked legal title of a trustee during the continuance of the trust has no pecuniary value.

Had Mrs. Jones had a power to appoint the entire equitable interest in land located within the United States, it could scarcely be doubted that this should be deemed property "passing" under a power of appointment within the meaning of section 302 (f). The case seems to us no less clear when the exercise of the power shifts the beneficial interest in stock of a domestic corporation. Fidelity-Philadelphia Trust Co. v. McCaughn, 34 F.(2d) 600 (C. C. A. 3), certiorari denied 280 U. S. 602, 50 S. Ct. 85, 74 L. Ed. 647, strongly supports this view, though in that case the donee of the power was a resident. See, also, Old Colony Trust Co. v. Commissioner, 73 F.(2d) 970 (C. C. A. 1); Blackburne v. Brown, 43 F.(2d) 320 (C. C. A. 3). James v. United States, 63 Ct. Cl. 379, is not to the contrary. There the nonresident decedent had no beneficial interest in any specific shares, but merely the obligation of the British Treasury to pay the value' of the stock deposited upon surrender of the Treasury warrants. The opinion intimated that an opposite result would have been reached had the decedent been the cestui of a trust.

Whether the trustees had the power to change their investments after Mrs. Jones' death or to turn over to her executors other property in lieu of stock in the American corporations we regard as immaterial. The beneficial interest in an undivided one-eighth of the stock passed to her appointees at her death. The chance that they might not receive one-eighth of the specific shares is no more than that which attends whenever a legatee takes his legacy subject to the power of the executor or trustee to sell the property in aid of convenient administration.

In our opinion the Commissioner was correct in including in the decedent's gross estate one-eighth of the value of the stock, and the decision of the Board must be reversed. It is so ordered.

L. HAND, Circuit Judge (concurring).

It seems to me impossible to read subdivision (d) of section 303 Revenue Act 1926 (26 USCA § 1095 (d) as admonitory, which I understand to mean that it was added only out of abundant caution. Section 302 (26 USCA § 1094) declares what the "gross estate" shall be; the language is general and covers "all property, real or personal * * * wherever situated." Although a non-resident may not be taxed for property situated outside the United States, section 302 makes no exception in his favor, and section 303 merely defines the deductions allowed to get the net estate. However, subdivision (b) § 303 (26 USCA § 1095 (b), starts off by declaring that the deductions allowed to a non-resident shall be taken from "that part of his gross estate which at the time of his death is situated in the United States," and that, read with section 302, defined his taxable "gross estate." Subdivisions (d) and (e), § 303 (26 USCA § 1095 (d, e), are specific declarations of what shall or shall not be regarded as part of that gross estate, regardless of the general test; I do not see how we can say that they are not constitutive. If so, to uphold the tax we must hold that the shares here in question were "owned and held" by the decedent. Had she had a bare power of appointment, I might have more trouble, but she had a life interest, equitable to be sure, but still an interest so far as any equitable rights can be interests. If the limitations in the will had been legal, I hardly think any one would have scrupled to say that she had "owned and held" the shares, wherever the certificates actually were; for those two words need not imply an absolute owner. And if that be true it would, I think, quite contradict the whole scheme of the title to import a distinction between legal and equitable interests, whatever view one takes of equitable interests, whether as no more than rights in personam, or as "property." Only lawyers make that distinction to-day and not many even of them; it would be pedantic to impute it to Congress, even in a tax statute. Therefore I think that the decedent "owned and held" the shares at her death and that they were a part of her taxable gross estate.