CHARLES E. SHATTUCK, administrator *de bonis non* with the will annexed, *vs.* GEORGE D. BURRAGE, trustee, & others.

Suffolk.    November 14, 15, 1917. — February 28, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Power. Executor and Administrator*, New assets. *Limitations, Statute of*, Special: new assets. *Words, "New assets."*

A power given by will to a beneficiary for life, to dispose by his will of property of the testator, gives the donee of the power no interest at law in the property over which he has the power of testamentary appointment and upon his death such property constitutes no part of his estate; but equity will enforce the equitable duty of such a donee of a power to exercise the power for the purpose of paying his debts before he gives away the property to other persons, and thus the creditors of such a deceased donee of a power acquire immediately upon his death the equitable right to enforce their claims against the property over which he has exercised the power of appointment.

An administrator *de bonis non* with the will annexed of the estate of a testator upon his appointment filed an inventory, in which he included a "claim" of uncertain value, consisting of a suit to recover a fund maladministered by the executor of the will of the testator's mother, of which by his will the testator had made an appointment under a power given him by his mother's will. The administrator *de bonis non* had collected a part of this appointed fund and had included it in his inventory and in the same inventory made reference to the claim to the balance of the appointed property as a claim against the estate of the executor of the will of the donor. A considerable portion of the balance of this fund was collected by the administrator *de bonis non* three years later, and thereupon the creditors of the testator brought a suit in equity under R. L. c. 141, §§ 11, 18, to establish their claim, otherwise barred by the special statute of limitations,

against this fund as "new assets" of the testator's estate. *Held,* that the collection of the portion of the appointed fund by the administrator *de bonis non* and its conversion into cash did not make the money thus collected new assets within the meaning of the statute.

In the case above described the testator in his will made use of the common phrase directing the payment of his just debts, and it was *pointed out* that the use of this ancient and common form could not be regarded as an exercise of the power of appointment by the testator, it being nothing more than an expression of the obligation imposed by law.

In the same case it was *said* that it was unnecessary to determine in that case whether the words "new assets" as used in the statute included such equitable assets as a fund appointed by a debtor testator to persons other than his creditors by the exercise of a power of testamentary appointment.

BILL IN EQUITY, filed in the Supreme Judicial Court on February 12, 1917, by the administrator *de bonis non* with the will annexed of the estate of Charles Howard Richardson, late of Chicago in the State of Illinois, for instructions as to whether the plaintiff should pay to the trustee under that will certain funds collected by him from the executor of the will of Moses W. Richardson, as the executor of the will of Rosa B. Richardson, the mother of Charles Howard Richardson, without awaiting the outcome of certain actions brought against the plaintiff by creditors of Charles Howard Richardson, otherwise barred by the special statute of limitations, in which they demanded the satisfaction of their claims out of the funds so collected by the plaintiff as being new assets of the estate of Charles Howard Richardson under R. L. c. 141, §§ 11, 18.

All the allegations of fact contained in the bill were admitted by the answers of the several defendants, and certain additional facts were incorporated in a stipulation executed and filed by all the parties. The case came on to be heard by *Loring,* J., who by agreement of the parties reserved it and all questions arising therein for determination by the full court.·

*R. D. Weston,* for the plaintiff, stated the case.

*A. Lincoln,* for the defendants Hayden and others.

*W. G. Thompson,* (*G. E. Mears* with him,) for the defendant Burrage.

RUGG, C. J. This is a bill in equity by the administrator *de bonis non* with the will annexed of the estate of Charles Howard Richardson for instructions as to what he shall do with funds in his hands. The controversy arises between general creditors of

the testator and the trustee appointed under his will to administer the trust created by its residuary clause. The general creditors of the testator contend that the funds in the plaintiff's hands are "new assets" under R. L. c. 141, §§ 11, 18, which lifts the bar of the statute of limitations upon certain conditions. The trustee combats that contention on several grounds and asserts that he is entitled to receive the entire fund.

The material facts are these: The testator died, his will was allowed and one Harding was appointed executor and gave due notice thereof in 1899. Harding filed no inventory or account until 1916. He resigned in 1913, when the plaintiff was appointed his successor, and gave due notice of his appointment. In his inventory filed in December, 1913, was included the item, under the designation a "claim" of uncertain value, out of which by far the largest part of the funds involved in this suit have come. The plaintiff succeeded in collecting a considerable sum on this claim in 1916. None of the funds received by the plaintiff were assets or property of the testator during his life. It was property over which he simply had a power of appointment. His mother created a spendthrift trust for his benefit during his life and gave him a general power of appointment by will over the principal. The funds in question accordingly were held by a trustee during the testator's life. The testator exercised the power of appointment by a general residuary clause in his will. *Stone* v. *Forbes,* 189 Mass. 163. *Howland* v. *Parker,* 200 Mass. 204, 207. The testator's estate never has been represented insolvent. By the first clause of his will he made a specific bequest of books, pictures, silverware and other articles of personal belongings, which were received by the legatee while Harding was executor, with his knowledge. Their value is not shown. That legatee is one of the defendant creditors, but the others had no knowledge of this property.

The proposition put forward in behalf of the creditors is that since property of a third person, not owned by the testator but over which he has exercised a general power of appointment, is deemed in equity to be assets of the estate of the person exercising the power so far as needed to make good a deficiency of his own property to pay his debts, it must likewise be regarded as "new assets" under the statute, when other necessary elements are

present. When a donor gives to another power of appointment over property, the donee of the power does not thereby become the owner of the property. The donee has no title whatever to the property. The power is simply a delegation to the donee of authority to act for the donor in the disposition of the latter's property. The appointee named by exercise of this delegated authority takes as recipient of the bounty of the donor and not as legatee of the donee. *Walker* v. *Treasurer & Receiver General,* 221 Mass. 600, where authorities are collected. *Drake* v. *Attorney General,* 10 Cl. & F. 257, 286. The right to exercise the power is not property and cannot be reached by creditors. *Crawford* v. *Langmaid,* 171 Mass. 309, 311. On no theory of hard fact is the property appointed the property of the donee of the power. But very early equity grafted onto these bald facts a principle of fair dealing. That principle was founded on the idea that a man ought to pay his debts if he could. Equity assumed as matter of good conscience and sound morals that a man in debt could not honestly have meant to give property to his friends or relatives to the exclusion of his creditors, when he could give it to anybody he chose. Regardless of his actual intention, equity said that creditors should not go unpaid and volunteers profit through the exercise of a power of appointment. It was held that a man of integrity in debt having the general power to give away the property of another would or ought to prefer to give it to his creditors, if they could be paid in no other way, rather than to give it to persons who had no legal claim upon him. It is a doctrine established in the interest of good faith. Various phrases have been used by eminent chancery judges to express this principle and the reason for it, such as, that the courts "stop *in transitu*" property on its way from the donor to the appointee, that "the court ought to intercept it for the benefit of a creditor," and that "It would be a strange thing if volunteers . . . should run away with the whole, and that creditors for a valuable consideration should sit down by the loss without any relief." See *O'Grady* v. *Wilmot,*[1916] 2 A. C. 231, at page 270. This is another of numerous illustrations of the application by courts of "fundamental ethical rules of right and wrong" to the complicated affairs of mankind. See *Robinson* v. *Mollett,* L. R. 7 H. L. 802, 817; *Mabardy* v. *McHugh,* 202 Mass. 148, 150.

This is purely a doctrine of equity. It is plain that in law appointed property is not assets of the estate of the person exercising the power of appointment. Being a principle applied in equity alone, it commonly has been said that property so appointed should be deemed or considered or treated in equity a part of the assets of the estate of the donee of the power so far as necessary to pay his creditors' claims which otherwise would go unsatisfied. They often are referred to as equitable assets of the estate.

The doctrine had its origin in England. Its history, underlying basis and application were discussed with exhaustive fullness in *O'Grady* v. *Wilmot,* [1916] 2 A. C. 231. It was recognized in this Commonwealth first in 1879 in *Clapp* v. *Ingraham,* 126 Mass. 200, and has been invoked frequently since that time.

The power of appointment in the case at bar was exercised and became effective immediately upon the proof of the will of the testator. At that moment the fund left by his mother was disposed of. From that instant it was deemed in equity to be so far a part of his assets as to be subject to the demand of his creditors to the extent necessary to satisfy that part of their claims not paid by his own property, in preference to the claim of the voluntary appointees or legatees named in his will. *Clapp* v. *Ingraham,* 126 Mass. 200. *Harmon* v. *Weston,* 215 Mass. 242, 248. *Montague* v. *Silsbee,* 218 Mass. 107, 109. *Vinton* v. *Pratt,* 228 Mass. 468, 470. It became the duty of the creditors to determine whether the testator's own property would be sufficient to pay their debts, and if it was not, then to take proper steps to subject this fund to their satisfaction, if that course seemed best to them.

It does not appear how large was the estate of the testator. But there were some assets of his own, because the legatee took possession of the property described in the specific bequest contained in the first clause of the will. The plaintiff had collected a part of this appointed fund and included it in his inventory of the testator's estate filed on his appointment in 1913. In that inventory reference is made by name to the claim to the balance of the appointed property. The claim was then known, disclosed and avowed by the legal representative of the estate of the testator. The precise form in which it was inventoried is of no consequence in this case. Speaking with accuracy, it was a claim to assets of the estate of Rosa B. Richardson, the mother of the testa-

tor. But the difficulty in securing the fund arose from maladministration of that estate by her executor, Moses W. Richardson. It was sufficiently identified under the circumstances by the reference in the inventory to the claim against the estate of Moses W. Richardson, deceased, executor of the will of Rosa B. Richardson. The collection of the fund and the conversion of it into cash could not in any event be "new assets" within the meaning of those words in the statute. See *Fay* v. *Haskell,* 207 Mass. 207, 215, 217, where the earlier cases are reviewed by Mr. Justice Hammond, and *Horton* v. *Robinson,* 212 Mass. 248.

The general reference in the testator's will to the payment of his just debts cannot be regarded as an appointment of the property to the payment of his own debts. That direction is an ancient and common form with a quite different purpose and ordinarily confers nothing more than the obligation imposed by law. *Staigg* v. *Atkinson,* 144 Mass. 564, 571. *O'Grady* v. *Wilmot,* [1916] 2 A. C. 231, 274, 275. For an appointment in favor of creditors see *Vinton* v. *Pratt,* 228 Mass. 468.

It follows that under the circumstances here disclosed the fund was not new assets within a sound interpretation of those words in the statute now under consideration. The claims of the creditors are barred by the statute of limitations.

It becomes unnecessary to determine whether the words "new assets" as used in this statute under any circumstances refer to anything more than legal assets which belonged to the deceased in his lifetime, and whether on correct principles of statutory construction they include such equitable assets as these.

Decree is to be entered directing the plaintiff to pay the entire fund to the trustee under the will of Charles Howard Richardson.

*So ordered.*